**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400

-and-

Gerald C. Bender, Esq.
1251 Avenue of Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402

*Proposed Counsel to the Debtor and
Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| Love Culture Inc.,[1] | Case No. 14-24508 (NLW) |
| Debtor-in-Possession. | |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING
ON A SENIOR SECURED AND SUPERPRIORITY BASIS,
(II) AUTHORIZING THE USE OF CASH COLLATERAL, (III) GRANTING
ADEQUATE PROTECTION, (IV) SCHEDULING FINAL HEARING THEREON,
AND (V) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its proposed counsel, submits this motion (the "Motion") for entry of an interim order substantially in the form attached hereto as Exhibit 1 (the "Interim DIP Order"), and after a final hearing on the Motion (the "Final Hearing"), a final order (the "Final DIP Order," and together with the Interim DIP Order, collectively, the "DIP Orders") (i) authorizing the Debtor to obtain

---

[1]    The last four digits of the Debtor's federal tax identification number are 8782.

post-petition financing (the "DIP Facility") on a senior secured and superpriority basis in accordance with the terms of a post-petition debtor-in-possession financing agreement (the "DIP Credit Agreement")[2] between the Debtor and Salus Capital Partners, LLC ("Salus"), as administrative and collateral agent (in such capacity, the "DIP Agent") and the other lenders from time to time party to the DIP Credit Agreement (collectively, the "DIP Lenders" and, together with the DIP Agent, the "DIP Secured Parties"), (ii) authorizing the Debtor to use Cash Collateral (as defined herein), (iii) granting adequate protection to the Prepetition Secured Lenders (as defined herein) with respect to, *inter alia*, such use of Cash Collateral and any diminution in the value of the Prepetition Secured Lenders' interests in the Prepetition Collateral (as defined herein), including Cash Collateral, (iv) prescribing the form and manner of notice of and setting the time for the Final Hearing, and (v) granting certain related relief.  In support of this Motion, the Debtor submits the *Declaration of J.E. Rick Bunka, Chief Restructuring Officer in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith, and respectfully states as follows:

## **JURISDICTION**

1.       This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* dated as of September 18, 2012 (Simandle, C.J.).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.       The statutory bases for the relief requested herein are sections 105(a), 361, 362, 363, 364, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the applicable Local Bankruptcy Rules for the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

---

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed in the DIP Credit Agreement.

## GENERAL BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

4.      The Debtor is operating its business and managing its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the filing of this Motion, no trustee or examiner has been requested in the Chapter 11 Case and no committee has been appointed in the Chapter 11 Case.

5.      Additional background facts surrounding the commencement of this Chapter 11 Case are more fully described in the First Day Declaration.

## RELEVANT BACKGROUND

### A.     The Prepetition Capital Structure

(i)     Prepetition Secured Debt.

6.      As of the Petition Date, the Debtor has outstanding secured debt to Salus under that certain *Credit Agreement* dated as of August 16, 2013 (the "Prepetition Credit Agreement") by and between Love Culture Inc. ("LCI"), as the borrower, and Salus as administrative agent and collateral agent ("Prepetition Agent") for the other lender parties thereto (the "Prepetition Secured Lenders"; together with Prepetition Agent, the "Prepetition Secured Parties").

7.      The Prepetition Credit Agreement provides for a credit facility (the "Prepetition Facility") composed of a (i) revolving loan of up to $17.5 million (the "Prepetition Revolving Loan"), and (ii) a $6 million term loan (the "Prepetition Term Loan").[3]

8.      As of the Petition Date, there is approximately $13,667,972 of outstanding principal and interest owing by the Debtor under the Prepetition Facility (collectively, together with any amounts paid, incurred or accrued but unpaid prior to the Petition Date in accordance with the Prepetition Credit Agreement, including all "Indebtedness"

---

[3]  The Prepetition Term Loan was originally issued for $3.5 million.  In February 2014, the amount of the loan was increased to $6 million.

as described in the Prepetition Credit Agreement, the "Prepetition Secured Obligations").  As more fully set forth in the Prepetition Credit Agreement, except for certain permitted encumbrances (the "Permitted Liens"), prior to the Petition Date, the Debtor granted first-priority security interests in and liens on (collectively, the "Prepetition Secured Liens") substantially all personal and real property of the Debtor, including accounts, inventory, equipment, and general intangibles (collectively, the "Prepetition Collateral") to the Prepetition Agent on behalf of the Prepetition Secured Parties to secure repayment of the Prepetition Secured Obligations.  The Prepetition Secured Obligations mature on or before August 16, 2016.

(ii)    Disputed Claims.

9.      Prime Business Credit, Inc. ("PBC") asserts that it is a secured creditor of the Debtor.  By virtue of a UCC-1 financing statement PBC filed on June 11, 2014, it alleges a security interest in and lien on substantially all of the Debtor's assets.  The Debtor disputes any claim asserted by PBC.

10.     United LC Capital, LLC ("United") filed a UCC-1 financing statement against substantially all of the Debtor's assets on April 20, 2014.  The Debtor has no documentation supporting any claims by United.  Accordingly, the Debtor disputes any claim asserted by United.

**B.      Debtor's Urgent Need for Post-Petition Financing and Use of Cash Collateral**

11.     The DIP Facility is critical to the Debtor's ability to continue to operate and preserve the value of its assets through the pendency of a sale process.  As set forth in the First Day Declaration, the Debtor experienced significant liquidity issues immediately prior to the Petition Date, negatively impacting its businesses and straining relationships with critical vendors and suppliers.  The Debtor must have immediate access to Cash Collateral (as defined herein) and obtain post-petition financing to avoid a piecemeal liquidation of its assets to the detriment of its creditors and other parties-in-interest.

12.     In the ordinary course of business, the Debtor uses cash on hand, cash generated by its operations, and borrowings under the Prepetition Revolving Loan to fund working capital, inventory purchases, capital expenditures and for other general corporate purposes.  An inability to access and use cash in the ordinary course of business during the Chapter 11 Case could cripple the Debtor's business and impair the value of its estate.  Indeed, the Debtor must use its cash to, among other things, continue to operate its business in an orderly manner, maintain business relationships with vendors, manufactures, and customers, pay employees, and satisfy other working capital and operation needs, all of which are necessary to preserve and maintain the value of the Debtor's assets and, ultimately, effectuate a successful sale of the Debtor's business.  Access to the DIP Facility and use of Cash Collateral (as defined herein) will allow the Debtor to continue operating its business while pursuing a sale of its assets.  After pursuing other avenues for funding its continuing operations, the Debtor has determined that the DIP Facility is the best financing option available.

13.     Leading up to the Petition Date, the Debtor worked with its legal and financial advisors to formulate a plan that would provide it with sufficient liquidity to continue operations.  As of the Petition Date, however, the Debtor has determined in its sound business judgment that without immediate access to the DIP Facility it will lack sufficient liquidity to continue operating its business pending an orderly sale of its assets.  Accordingly, without the relief requested in the Motion, the Debtor would be required to commence an immediate shutdown of its operations and piecemeal liquidation of its assets to the detriment of its creditors, vendors, employees, and other stakeholders.

14.     However, if the Motion is approved, the DIP Facility will provide the Debtor the liquidity that it needs to continue to preserve the value of its estate pending the sale of its assets pursuant to section 363 of the Bankruptcy Code.  Providing the Debtor with the ability to continue its business operations through a sale with a competitive bidding process, rather than a piecemeal liquidation, will maximize value for the Debtor's creditors, vendors,

employees, and other stakeholders.  Moreover, the Debtor will honor gift cards and customer credits issued prior to the Petition Date for two weeks.

**C.     The DIP Credit Agreement**

15.     Prior to the Petition Date, the Debtor and its legal and financial advisors undertook an analysis of the Debtor's projected financing needs during the pendency of this Chapter 11 Case.  Based on such analysis, the Debtor determined that it could not continue to operate solely on the use of "cash collateral," as that term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), and needed additional sources of working capital and financing to operate its business and preserve the value of its assets during a Chapter 11 sale process.  Accordingly, the Debtor's advisors approached potential participants in a debtor-in-possession financing arrangement.  Based on such efforts, the Debtor and its advisors determined that Salus was willing to provide post-petition financing and consent to the use of Cash Collateral on more favorable terms than any other reasonably available alternative.

16.     Accordingly, the Debtor began negotiating with Salus regarding the terms of a post-petition DIP Facility.  After a series of good faith, arms'-length negotiations, the Debtor entered into the DIP Credit Agreement[4] with the DIP Agent and DIP Lenders.  Pursuant to the DIP Credit Agreement, the DIP Secured Parties have agreed to, *inter alia*, provide the Debtor with the DIP Facility, subject to the DIP Financing Conditions (as defined herein), and the Prepetition Secured Parties have agreed to permit the Debtor to use the Cash Collateral in accordance with the terms of an approved budget (the "Budget")[5] during the pendency of the Chapter 11 Case.  The DIP Facility provides for a revolving credit facility of $12 million.

17.     The DIP Facility is structured to address the Debtor's need for liquidity to continue to operate until it sells its assets and maximizes the value of those assets for all of its stakeholders.  For instance, the DIP Revolving Loan increases the Debtor's availability under the Prepetition Revolving Loan by modifying certain components used to calculate the

---

[4]  A copy of the DIP Credit Agreement is attached to the Interim DIP Order as Exhibit A.
[5]  A copy of the Budget is attached to the Interim DIP Order as Exhibit B.

borrowing base in the Debtor's favor.  Additionally, the DIP Credit Agreement significantly reduces the Debtor's availability block under the Prepetition Credit Agreement, thereby further increasing the Debtor's access to cash.  These provisions were rigorously negotiated by the Debtor and are essential to providing the Debtor necessary and immediate access to capital that will enable it to market and conduct an orderly sale of its assets.

18.    As set forth below, approval of the DIP Facility, including the repayment of a portion of the Prepetition Obligations pursuant to the terms thereof, is essential to avoiding immediate and irreparable harm that would otherwise ensue from a piecemeal liquidation of the Debtor's assets.  Immediate access to Cash Collateral and postpetition financing will enable the Debtor to continue to operate, meet payroll obligations, and maintain business relationships with vendors, suppliers, and customers, which is necessary to preserve the value of its assets pending a sale.  Moreover, entry of the Interim DIP Order will increase the Debtor's liquidity through the less restrictive borrowing base and reduced availability block provided for in the DIP Facility, which the Debtor, in its sound business judgment, believes will sustain its businesses as a going concern through the marketing and sale process.

19.    Accordingly, the Debtor requests that the Court, among other things, (i) approve the terms of the DIP Credit Agreement (including the consensual use of Cash Collateral in accordance with the Budget); (ii) authorize the Debtor to execute and deliver the DIP Credit Agreement and all agreements, documents, and instruments contemplated by the DIP Credit Agreement and DIP Orders (collectively with the DIP Credit Agreement and DIP Orders, the "DIP Documents"), which shall be subject to the Court's approval at the Final Hearing; and (iii) grant adequate protection to the Prepetition Secured Parties as set forth in the Interim DIP Order.

**D.     Summary of DIP Credit Agreement**

20.     In accordance with the disclosure requirements of Bankruptcy Rule 4001(b), (c), and (d) and Local Rule 4001-4, the material terms of the DIP Credit Agreement are as follows:[6]

| Term or Provision | DIP Credit Agreement |
|---|---|
| **Borrower**<br>*See Preamble.* | Love Culture Inc., as a Borrower |
| **Guarantors**<br>*See Schedule 1.01, Definitions.* | Jai Rhee |
| **DIP Lenders**<br>*See Preamble.* | Salus Capital Partners, LLC as Administrative Agent and Collateral Agent and each lender from time to time a party thereto |
| **Commitments**<br>*See Sections 1.01 and 2.01.* | $12 million in Aggregate Commitments |
| **Availability Block**<br>*See Section 1.01, Definitions.* | $0 |
| **Borrowing Base**<br>*See Section 1.01, Definitions.* | Means, at any time of calculation, an amount equal to: (a) the Cost of Eligible Inventory, net of Inventory Reserves, multiplied by the Appraised Value of Eligible Inventory, multiplied by the Inventory Advance Rate; <u>plus</u> (b) ninety-five percent (95%) of the Borrower's Eligible Credit Card Receivables; (c) <u>minus</u> the then amount of all Availability Reserves, if any; (d) plus $2,000,000. |
| **DIP Revolving Loan Interest Rate**<br><br>*See Sections 1.01 and 2.07(a)* | LIBO Rate plus the Applicable Margin |
| **Default Rate**<br><br>*See Section 1.01, 2.07(b)* | LIBO Rate plus the Applicable Margin plus 2% |
| **Fees**<br><br>*See Section 2.08.* | **DIP Monitoring Fee**: $100,000 per annum, to be paid $8,333 per month on the Closing Date and on the first day of each month thereafter until the later of (i) the Maturity Date, and (ii) for so long as any obligations remain outstanding under the Agreement.<br><br>**DIP Exit Fee**: 3% of the Aggregate Commitments as of the |

---

[6]  This summary is qualified in its entirety by the provisions of the DIP Credit Agreement.  Capitalized terms used in this summary but not otherwise defined in the Motion shall have the meanings set forth in the DIP Credit Agreement.  To the extent there are any conflicts between this summary and the DIP Credit Agreement, the terms of the DIP Credit Agreement shall govern.

| | |
|---|---|
| | Closing Date, or $1,225,000, payable on the earliest to occur of a (i) sale of substantially all of the assets, (ii) confirmation in the Chapter 11 Case of a plan of reorganization or liquidation, or (iii) the Termination Date. |
| **Security**<br><br>*See Preamble and Section [].* | The DIP Facility is secured by the DIP Lenders' security interest in and liens on all or substantially all of the assets of the Loan Parties included in the Collateral and entitled to superpriority administrative status under the Bankruptcy Code. |
| **DIP Carve Outs**<br><br>*See Sections 1.01 and proposed Interim Order at ¶ 30(a).* | The following expenses are considered "Carve-Outs":<br><br>As used in this Interim Order, the "<u>DIP Carve Out</u>" means, collectively, the following fees and expenses: (i) all statutory fees required to be paid to (a) the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 1930(a), and (b) to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), as determined by agreement of the United States Trustee or by final order of the Court; (ii) reasonable fees and expenses of a Trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $25,000; and (iii) the aggregate amount of accrued and unpaid professional fees and expenses of the Debtor and any Statutory Committee, retained by either of them by final order of the Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective) under sections 327, 328, or 1103(a) of the Bankruptcy Code (the "<u>Case Professionals</u>"), to the extent such fees and expenses are allowed and payable pursuant to an order of the Court (which order has not been reversed, vacated or stayed) ("<u>Allowed Professional Fees</u>") and the reimbursement of out-of-pocket expenses allowed by the Bankruptcy Court incurred by the Statutory Committee members in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members) ("<u>Committee Fees</u>"), which amounts shall be equal to the sum of (a) $300,000 (which is being deposited into the Professional Fee Escrow Account on the Closing Date in accordance with the Budget) allocated as follows: (I) $125,000 for Lowenstein Sandler LLP, (II) $125,000 for PriceWaterhouseCoopers, and (III) $50,000 for Committee Professionals and Committee Fees; and (b) an amount[7] which shall be funded into the Professional Fee |

---

[7]  As reflected in the Budget filed with the Motion, the amount of $372,000 shall be funded during the week of July 19, 2014, the amount of $365,000 shall be funded during the week of July 26, 2014, and the amount of $372,000 shall be funded during the week of July 31, 2014.

| | Escrow Account on Thursday of each week (or such other day of the week selected by the Debtor) pursuant to and in accordance with the Budget (the "Periodic Compensation Fees"), provided that the DIP Agent has not delivered a Termination Declaration. |
|---|---|
| **Use of Proceeds**<br><br>*See Section 6.11.* | Use the proceeds of the Revolving Loans to (a) to the extent permitted in the Interim Financing Order and the Final Financing Order, to repay certain the Pre-Petition Indebtedness, (b) to pay fees, costs and expenses in connection with this Agreement, including payment of Agent's reasonable attorney's fees and other out of pocket expenses, (c) to pay post-petition operating expenses of the Borrower incurred in the ordinary course of business (including purchases of inventory), (d) to pay costs and expenses of administration of the Chapter 11 Case, including payment of Allowed Professional Fees, and (e) to pay other amounts as specified in the Approved Budget, in each case to the extent permitted under applicable Law, the Approved Budget and the Loan Documents, including post-petition operating expenses set forth in the Approved Budget and other expenses arising in the Chapter 11 Case as may be approved by the Bankruptcy Court and the Agent. |
| **Maturity Date**<br><br>*See Section 1.01.* | July 17, 2015. |
| **Events of Default**<br><br>*See Section 8.01.* | Events of default under the DIP Facility are identified in Section 8.01 of the DIP Credit Agreement. |
| **Conditions Precedent to Credit Extensions**<br><br>*See Sections 4.01 and 4.02* | Conditions precedent to the Initial Credit Extension and all Credit Extensions are set forth in Sections 4.01 and 4.02, respectively, and include the retention of a chief restructuring officer acceptable to Salus at the Debtor's expense and pursuant to an agreement reasonably acceptable to Salus. |
| **Financial Covenants**<br>*See Section 7.15.* | Permit actual (i) disbursements (including ordinary course operating expenses, bankruptcy related expenses (including professional fees and expenses), capital expenditures, and fees and expenses of the Agent (including counsel therefor) and any other fees and expenses relating to the Loan Documents), (ii) a calculation of Availability, and (iii) the Outstanding Amount of the Loans to vary by more than fifteen percent (15%) from the results projected for each |

| | |
|---|---|
| | such item in the applicable Approved Budget with respect to any Testing Period (except to the extent such actual results are more favorable). |
| **Indemnification**<br>*See Section 10.04(b).* | The Loan Parties agree to indemnify the DIP Lenders as set forth in Section 10.04 of the DIP Credit Facility. |
| **Release**<br>*See Section 2.15.* | The DIP Facility provides general releases in favor of the DIP Lenders. |
| **Bankruptcy Milestones**<br><br>*See Sections 1.01 and 6.24* | <u>Asset Sales Process</u>.  The Borrower shall conduct a process for an Asset Sale.  In connection with the Asset Sale, the Borrower shall promptly, upon any such information becoming available to the Borrower, provide the Agent copies of any informational packages provided to potential bidders, and any draft order approving the Asset Sale, all draft agency or sale agreements, the deadlines established as to receipt of bids and, upon request of the Agent, a status report and updated information relating to such motions and permitted store closings, and copies of any bids received from any proposed bidder for all or any portion of the Borrower's assets and any updates, modifications or supplements to such information and materials.<br><br><u>Sale and Bidding Procedures</u>.  (i) Within one day after the Petition Date, the Borrower shall file the Asset Sale Motion seeking approval of the sale of substantially all the assets, which motion shall be in form and substance acceptable to the Agent in its Permitted Discretion.  (ii) On or before **July 24, 2014**, the Bankruptcy Court shall hold the Asset Sale Hearing and enter the Asset Sale Procedures Order, which order shall be in form and substance acceptable to the Agent in its Permitted Discretion.<br><br><u>Winning Bidder; Sale</u>.  The Borrower shall conduct an auction and choose a winning bidder for the right to conduct Asset Sales no later than **July 28, 2014**.  The Bankruptcy Court must enter the Asset Sale Order no later than **July 29, 2014**, which order shall be in form and substance acceptable to the Agent in its Permitted Discretion with the closing of the Asset Sale to occur no later than **July 30, 2014**. |

### E.     Additional Provisions to Be Highlighted Under Local Rule 4001-4

21.     In addition to the material terms discussed above, the Debtor has identified the below provisions of the Interim DIP Order that are required to be highlighted pursuant to Local Rule 4001-4:

(i)     *Partial Rollup*.  The DIP Credit Agreement contemplates a partial roll-up of the Prepetition Obligations under the Prepetition Facility into the DIP Revolving Facility after entry of the Interim DIP Order.  *See* Interim DIP Order at ¶ F(iv).

(ii)    *Waivers and Concessions as to Validity of Prepetition Debt*.  Per the Interim DIP Order, the Debtor stipulates to the amount, nature and extent of the Prepetition Secured Parties' liens and security interests with respect thereto.  *See* Interim DIP Order at ¶ E(iii).

(iii)   *Committee Challenge Period*.  Per the Interim DIP Order, any committee of unsecured creditors shall have 60 days from the date the committee is formed (or, if no committee is formed, parties-in-interest with appropriate standing shall have 75 days from the entry of the Interim DIP Order) to challenge the Prepetition Secured Parties' liens and security interests under the Prepetition Credit Agreement.  *See* Interim DIP Order at ¶ 33.

(iv)    *Bankruptcy Code Section 506(c) Waiver*.  The Interim DIP Order provides for a waiver of claims under section 506(c) of the Bankruptcy Code upon the entry of the Final DIP Order.  *See* Interim DIP Order at ¶ 36.

(v)     *Liens on Avoidance Actions*.  The definition of the DIP Collateral under the Interim DIP Order includes all causes of action or proceeds thereof, including avoidance actions, upon entry of the Final DIP Order.  *See* Interim DIP Order at ¶ 6(a)(xv).

(vi)    *Termination, Default, Remedies*.  Per the Interim DIP Order, a termination event occurs upon the occurrence of an event of default under the DIP Credit Agreement.  *See* Interim DIP Order at ¶¶ 22, 24.

## **RELIEF REQUESTED**

22.     By this Motion, the Debtor seeks the entry of the DIP Orders granting the following relief:

(i)     authorizing the Debtor to enter into the DIP Credit Agreement and obtain senior secured, superpriority post-petition $12 million revolving credit facility consisting of a partial roll-up of the Debtor's existing obligations under the Prepetition Revolving Loan subject to (x) the entry of a Final DIP Order satisfactory to the DIP Agent, (y) the execution and delivery of DIP Documents in form and substance satisfactory to the DIP Agent, and (z) the satisfaction of the terms and conditions set forth in the DIP Documents (collectively, the "DIP Financing Conditions");

(ii)    authorizing the Debtor to execute and deliver the DIP Credit Agreement and the other DIP Documents and to perform such other acts as may be

necessary or desirable in connection with the DIP Documents, all of which
shall be subject to the Court's approval at the Final Hearing;

(iii)    subject to the satisfaction of the DIP Financing Conditions, authorizing
the Debtor to enter into the DIP Facility and incur any and all obligations
owing thereunder and under the DIP Documents from time to time
(collectively, the "<u>DIP Obligations</u>") and to grant to the DIP Agent
allowed superpriority administrative expense claim ("<u>DIP Superpriority
Claim</u>") status in the Chapter 11 Case and any Successor Case (as defined
herein) and authorizing the Debtor to grant to the DIP Agent
automatically perfected security interests in and liens on all of the DIP
Collateral (as defined in the Interim DIP Order), in each case subject to
the priorities set forth in the Final DIP Order;

(iv)    authorizing the Debtor's use of Cash Collateral of the Prepetition Secured
Parties;

(v)     providing adequate protection to the Prepetition Secured Parties as set
forth in the Interim DIP Order;

(vi)    vacating and modifying the automatic stay imposed by section 362 of the
Bankruptcy Code to the extent necessary to implement and effectuate the
terms and provisions of the Interim DIP Order and, subject to the
satisfaction of the DIP Financing Conditions and the DIP Documents;

(vii)   scheduling a Final Hearing to consider the relief requested in the Motion
and approving the form of notice with respect to the Final Hearing; and

(viii)  granting related relief.

## BASIS FOR RELIEF REQUESTED

**A.      The Debtor Should Be Authorized to Obtain Postpetition Financing**

**(i)      Entering into the DIP Credit Agreement and the DIP Documents is an
Exercise of the Debtor's Sound Business Judgment**

23.     Provided that an agreement to obtain secured credit does not run afoul of
the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor
considerable deference in acting in accordance with its sound business judgment in obtaining
secured or superpriority financing pursuant to section 364 of the Bankruptcy Code. *See e.g.*,
*Trans World Airlines, Inc. v. Travellers Intl AG (In re Trans World Airlines, Inc.)*, 163 B.R.
964, 974 (Bankr. D. Del. 1994) (approving post-petition loan and receivables facility because
such facility "reflect[ed] sound and prudent business judgment"); *In re Barbara K. Enters., Inc.,*

Case No. 08-11474, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (explaining that courts defer to a debtor's business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[c]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a Debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest"); *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of post-petition financing requires, *inter alia*, an exercise of "sound and reasonable business judgment."); *see also Bray v. Shenandoah Fed. Say. & Loan Assoc. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (stating that "[t]he statute imposes no duty to seek from every possible lender before concluding that such credit is unavailable").

24.     Specifically, to determine whether the business judgment standard is met, a court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code") (citation omitted).

25.     Moreover, where few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom.*, *Anchor Say. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also, In re Garland Corp.*, 6 B.R. 456, 461 (B.A.P. 1st Cir. 1980) (secured credit under section 364(c)(2) of the Bankruptcy Code authorized, after notice and a hearing, upon showing that unsecured credit unobtainable); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663

(D. Colo. 1981) (bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met); *Ames*, 115 B.R. at 37-39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

26.     The Debtor's execution of the DIP Documents is an exercise of its sound business judgment that warrants approval by the Court.  Prior to the Petition Date, the Debtor and its legal and financial advisors undertook an analysis of the Debtor's projected financing needs during the pendency of the Chapter 11 Case.  Based on that analysis, the Debtor determined that post-petition DIP financing is immediately necessary to preserve the value of its estate in this Chapter 11 Case while the Debtor conducts a sale of its assets.  Accordingly, the Debtor began negotiating with the Prepetition Secured Parties regarding the terms of the post-petition DIP Facility.  After a series of good faith, arms-length negotiations, the Debtor and the DIP Secured Parties entered into the DIP Credit Agreement, thereby reaching agreement on the material terms of the DIP Facility (subject to the DIP Financing Conditions).  Based on the advice financial professionals, and the Debtor's own analysis, the Debtor has determined in its sound business judgment that the DIP Facility provides a greater amount of financing on more favorable terms than any other reasonably available alternative.  Without post-petition financing, the Debtor would not be able to preserve the value of its assets or continue operations until it is able to sell its assets pursuant to section 363 of the Bankruptcy Code.  Moreover, as noted, virtually all of the Debtor's assets are encumbered by Prepetition Secured Liens.  Thus, even if alternative debtor-in-possession financing were available on favorable terms and conditions and could be consummated in the time required to address the Debtor's immediate liquidity needs, such a financing would result in a protracted priming contest with the Prepetition Secured Parties, the results of which could not be predicted with certainty.  Such potential protracted litigation would jeopardize the Chapter 11 Case from the outset and possibly result in the immediate piecemeal liquidation of the Debtor's assets and reduced recoveries for the Debtor's creditors.  By contrast, no priming contest will result under the

proposed DIP Facility because the DIP Agent will be priming its own Prepetition Secured Liens on a fully consensual basis.

27.     Therefore, pursuant to the terms of the DIP Credit Agreement, the DIP Facility will provide the Debtor with funds that the Debtor and its advisors have determined should be sufficient to solidify its credit-worthiness to its vendors and support the Debtor's ongoing operations during the Chapter 11 Case and its sale process.

**(ii)     The Debtor Should Be Authorized to Obtain Post-Petition Financing on a Senior Secured and Superpriority Basis**

28.     Section 364 of the Bankruptcy Code authorizes a debtor to obtain, in certain circumstances, post-petition financing on a secured or superpriority basis, or both. Specifically, section 364(c) of the Bankruptcy Code provides, in pertinent part, that the Court, after notice and a hearing, may authorize a debtor that is unable to obtain credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code to obtain credit or incur debt:

> (1)     with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code];
>
> (2)     secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3)     secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

29.     To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis. *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986).  "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.; see also, Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 584 (S.D.N.Y. 2001) (superpriority administrative expenses authorized where debtor could not obtain credit as an administrative expense).  When few lenders are likely to be

able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.,* 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom., Anchor Savs. Bank FSB v. Sky Valley, Inc.,* 99 B.R. 117, 120 n. 4 (N.D. Ga. 1989); *see also, Ames Dep't Stores,* 115 B.R. at 40 (approving financing facility and holding that the debtor made reasonable efforts to satisfy the standards of section 364(c) of the Bankruptcy Code where it approached four lending institutions, was rejected by two, and selected the most favorable of the two offers it received).

30.     The Court should (i) authorize the Debtor to grant to the DIP Agent senior liens on the Debtor's unencumbered property, pursuant to section 364(c)(2) of the Bankruptcy Code, and junior liens on the Debtor's property that are subject to valid, perfected, and unavoidable liens in existence immediately prior to the Petition Date (other than prior permitted encumbrances under the Prepetition Credit Agreement) or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, pursuant to section 364(c)(2) of the Bankruptcy Code, and (ii) grant the DIP Obligations superpriority administrative expense status as provided for in section 364(c)(1) of the Bankruptcy Code, subject, in each instance, to the DIP Carve Out (as defined in the Interim DIP Order).

31.     Because the DIP Facility also contemplates the granting of priming liens to the DIP Agent (subject to the Carve-Out and other Permitted Liens), the DIP Facility also is subject to approval under the requirements of section 364(d) Bankruptcy Code.    Section 364(d)(1) provides:

> The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if-
>
> (A)     the trustee is unable to obtain such credit otherwise; and

(B)     there is adequate protection of the interest of the holder of
the lien on the property of the estate on which such senior
or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).  Because both of these conditions are satisfied, the Debtor submits that the
Court should grant the DIP Agent senior liens and security interests as provided in the
Interim DIP Order.

32.    *First*, as discussed above, section 364(d)(1)(A) of the Bankruptcy Code
is satisfied because the Debtor is unable to obtain credit sufficient to sustain its day-to-day
business operations or maintain the value of its assets through a sale process other than by the
granting to the DIP Agent a first priority lien and security interest in the Debtor's assets as
provided in the Interim DIP Order.  Moreover, the Debtor negotiated the DIP Credit Agreement
at arm's-length and has determined, in the exercise of its business judgment and in consultation
with its legal and financial advisors, that such financing is the best and only viable financing
available under the circumstances.  Bankruptcy Courts grant a debtor considerable deference in
acting in accordance with its business judgment.  *See, e.g.*, *Bray v. Shenandoah Fed. Sav. &
Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores,
Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's
discretion under section 364 is to be utilized on grounds that permit reasonable business
judgment to be exercised so long as the financing agreement does not contain terms that leverage
the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to
benefit parties in interest").

33.    *Second*, section 364(d)(1)(B) of the Bankruptcy Code is satisfied because
the Debtor proposes to provide adequate protection to the Prepetition Secured Parties in the
manner set forth above.  Moreover, the Prepetition Secured Parties are the same as the DIP
Secured Parties and support and consent to the proposed DIP Facility in its entirety.

34.    For these reasons, the Debtor submits that the conditions set forth in
sections 364(c) and 364(d) of the Bankruptcy Code are satisfied and that the circumstances of
these Chapter 11 Case warrant approval the DIP Facility.  The Debtor further submits that the

terms of the DIP Facility and the DIP Orders are fair, reasonable, and necessary under the circumstances, and should be approved in their entirety.

**B.**     **The Debtor's Request To Use the Prepetition Secured Parties' Cash Collateral, Pursuant to the Terms of the DIP Orders, Should Be Approved**

35.    The Debtor's use of property of its estates is governed by section 363 of the Bankruptcy Code, which provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

36.    Section 363(c)(2)(A) of the Bankruptcy Code permits a debtor-in-possession to use cash collateral with the consent of the secured party.  Section 363(e) of the Bankruptcy Code requires a debtor to adequately protect its secured creditors' interest in property to be used by the debtor against any diminution in value of such creditors' interest resulting from the debtor's use of the property.

37.    What constitutes adequate protection is decided on a case-by-case basis. *See In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also, In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *In re Sw.Assocs.*, 140 B.R. 360 (Bankr. S.D.N.Y. 1992).  The purpose of adequate protection is to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use.  *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D.N.Y. 1996).  Adequate protection can come in various forms, including payment of adequate protection fees, payment of interest, and granting of replacement liens and administrative claims.

38.    As discussed above and as set forth in detail in the Interim DIP Order, the Debtor proposes to provide the Prepetition Secured Parties, with three primary forms of adequate protection to the extent of any diminution in value of its respective interests in the Prepetition Collateral (including the Cash Collateral) resulting from the Debtor's use, sale, or lease of the Prepetition Collateral (including the Cash Collateral) during the Chapter 11 Case and the imposition of the automatic stay.

39.    *First*, the Debtor will provide the Prepetition Secured Parties with adequate protection replacement liens in all Prepetition Collateral (subject to certain Permitted Liens and the Carve-Out), which includes, without limitation, any and all property of the Debtor, to the extent of and diminution in the value of the Prepetition Collateral.  *Second*, subject to certain Permitted Liens and the Carve-Out, as further protection against any diminution in the value of the Prepetition Secured Parties' interest in the Prepetition Collateral, the Prepetition Secured Parties shall be granted a DIP Superpriority Claim against the Debtor to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code.  *Third*, the Debtor will provide the Prepetition Secured Parties with payment of reasonable professional fees and expenses, subject to the limitations set forth in the DIP Documents and Budget.

40.    In light of the foregoing, the Debtor submits, and the Prepetition Secured Parties agree, that the foregoing forms of proposed adequate protection for the benefit of the Prepetition Secured Parties are necessary and appropriate under the circumstances of the Chapter 11 Case to ensure that the Debtor is able to continue using Cash Collateral.  Moreover, courts in this Circuit have granted similar relief in other recent chapter 11 cases.  *See e.g.*, *In re Dots, LLC, et al.*, Case No. 14-11016 (DHS) (Bankr. D. N.J. Feb. 18, 2014); *In re 155 Route 10 Assocs., Inc., et al.*, Case No. 12-24414 (NLW) (Bankr. D. N.J. June 5, 2012); *In re Marcal Paper Mills, Inc.*, No. 06-21886 (MS) (Bankr. D. N.J. Dec. 4, 2006).  Accordingly, the adequate protection proposed herein is fair and reasonable and sufficient to satisfy the requirements of sections 363(c)(2) and (e) of the Bankruptcy Code.

**C.    Request for Entry of Interim DIP Order**

-20-

41.     Bankruptcy Rule 4001(b) and (c) provides that a final hearing on a motion to use Cash Collateral or obtain credit may not be commenced earlier than fourteen days after service of such motion.  However, the Court is authorized to conduct an expedited hearing prior to the expiration of such fourteen day period and to authorize the obtaining of credit or use of cash collateral where, as here, such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate.

42.     The Debtor's ability to finance its operations and the availability of sufficient working capital and liquidity are vital to the confidence of the Debtor's employees, vendors, and customers and to the preservation and maintenance of the value of the Debtor's estate.  As discussed above, the Debtor requires immediate access to Cash Collateral in order to meet its liquidity needs in connection with this Chapter 11 Case.  While the Interim DIP Order also approves the Debtor's authorization to enter into the DIP Credit Agreement, the Debtor submits that such relief is inseparable from the relief relating to the use of Cash Collateral.  The Prepetition Secured Parties were unwilling to consent to the Debtor's use of Cash Collateral absent the Debtor's agreement to, and the Court's approval of, the DIP Credit Agreement in its entirety.  Accordingly, the Debtor seeks immediate entry of the Interim DIP Order to prevent immediate and irreparable harm to the Debtor's estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b).

**D.     Modification of the Automatic Stay**

43.     The DIP Facility contemplates a modification of the automatic stay, to the extent applicable and necessary, to permit the parties to implement the terms of the DIP Orders.  Provisions of this kind are standard in debtor-in-possession financings and are reasonable under the circumstances of this Chapter 11 Case.

**E.     Payment of the Prepetition Secured Obligations Should Be Approved**

44.     The Debtor submits that the DIP Facility represents the best post-petition financing available to the Debtor under the circumstances and that entry into the DIP Credit Agreement is in the best interests of the Debtor and its estate.  Substantially all of the Debtor's

assets are encumbered by the liens and security interests securing the Debtor's Prepetition Secured Obligations. Thus, absent payment of the Prepetition Secured Obligations, the Debtor would be required to attempt to prime the liens of the Prepetition Secured Parties. Even if the Debtor had been able to locate a debtor-in-possession lender willing to provide a priming facility, the Debtor would have risked further harm to its business if it had chosen to engage in expensive, time-consuming, and uncertain litigation.

45.    Moreover, as set forth above, the Debtor engaged in good-faith, arms' length negotiations with the DIP Agent prior to determining that it was in its best interest to enter into the DIP Credit Agreement. Given the Debtor's immediate liquidity needs, the DIP Agent's ability to act quickly was a significant factor in the Debtor's determination.

46.    Finally, repayment of a portion of the debt owed to the Prepetition Secured Parties will not prejudice other creditors because the Interim DIP Order provides that the approval of the DIP Facility is without prejudice to the right of any official committee appointed in the Chapter 11 Case (or, if none, parties-in-interest) to contest or challenge the validity of the Prepetition Secured Parties' liens. *See* Interim DIP Order at ¶ 33. For the foregoing reasons, the Debtor respectfully submits that the repayment of a portion of the Prepetition Secured Obligations is appropriate in light of the circumstances of the Chapter 11 Case.

47.    Courts routinely approve debtor-in-possession financing facilities that provide for the repayment of prepetition indebtedness owed pursuant to secured prepetition revolving and/or term loan credit facilities. *See e.g.*, *In re Dots, LLC, et al.*, Case No. 14-11016 (DHS) (Bankr. D. N.J. Feb. 18, 2014); *In re Mantara, LLC*, Case No. 13-13370 (Bankr. S.D.N.Y. Oct. 24, 2013); *In re NE Opco, Inc.*, Case No. 13-11483 (Bankr. D. Del. Jun. 11, 2013); *In re Big M, Inc.*, Case No. 13-10233 (DHS) (Bankr. D.N.J. Jan. 8, 2013). Accordingly, the Debtor respectfully states that there is precedent for the relief requested herein.

## REQUEST FOR FINAL HEARING

48.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable, but in no event later than thirty days following the entry of the Interim DIP Order, and fix the time and date prior to the Final Hearing for parties to file objections to the Motion.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

49.     To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## WAIVER OF MEMORANDUM OF LAW

50.     Because the legal points and authorities upon which this Motion relies are incorporated herein and do not raise any novel issues of law, the Debtor respectfully requests that the requirement of the service and filing of a separate memorandum of law pursuant to Local Rule 9013-2 be deemed waived.

## NO PRIOR REQUEST

51.     No previous motion for the relief sought herein has been made to this or to any other court.

## NOTICE

52.     Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of New Jersey; (ii) the Debtor's thirty largest unsecured creditors; (iii) counsel for the Prepetition Lender and DIP Lender, c/o Greenberg Traurig, LLP Attn: Alan J. Brody, Esq., Jeffrey M. Wolf, Esq. and Kit Peabody, Esq., 200 Park Avenue, P.O. Box 677, Florham Park, NJ 07932; (iv) Prime Business Credit, Inc., 1055 West 7th Street, Suite 2200, Los Angeles, CA 90017 attn.: Kevin Hong, Account Executive; (v) United LC Capital, LLC, 3530 Wilshire Blvd., Suite 695, Los Angeles, CA 90010; and (vi) those parties who have filed a

notice of appearance and request for service of pleadings in this Chapter 11 Case pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

**WHEREFORE,** the Debtor respectfully requests that this Court: (i) enter the Interim DIP Order, (ii) schedule the Final Hearing to consider entry of the Final DIP Order, and (iii) grant the Debtor such other and further relief as the Court deems just and proper.


Dated: July 16, 2014                              Respectfully submitted,

                                                  **LOWENSTEIN SANDLER LLP**

                                                  /s/ Kenneth A. Rosen
                                                  Kenneth A. Rosen, Esq.
                                                  65 Livingston Avenue
                                                  Roseland, New Jersey 07068
                                                  Telephone: (973) 597-2500
                                                  Facsimile: (973) 597-2400

                                                          -and-

                                                  Gerald C. Bender, Esq.
                                                  1251 Avenue of Americas
                                                  New York, New York 10020
                                                  Telephone: (212) 262-6700
                                                  Facsimile: (202) 262-7402

                                                  *Proposed Counsel to the Debtor and*
                                                  *Debtor-in-Possession*