Hearing Date and Time: July 17, 2014, at 1:00 9.m. (EST)

BLAKELEY & BLAKELEY LLP
54 W. 40th Street
New York, NY 10018
Telephone:  (949) 260-0611
Facsimile:  (949) 260-0613
Ronald A. Clifford (*Pro Hac Vice Pending*)

MCCARTER & ENGLISH, LLP
100 Mulberry Street, Four Gateway Center
Newark, New Jersey 07102
Telephone:  (973) 639-2007
Facsimile:  (973) 297-3797
Scott H. Bernstein

Counsel to Prime Business Credit, Inc.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| LOVE CULTURE, INC., | Case No. 14-24508 (NLW) |
| Debtor. | |

### OPPOSITION TO DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING ON A SENIOR SECURED AND SUPERPRIORITY BASIS, (II) AUTHORIZING THE USE OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION, (IV) SCHEDULING FINAL HEARING THEREON, AND (V) GRANTING RELATED RELIEF

Prime Business Credit, Inc. ("PBC"), a secured creditor of Love Culture, Inc. (the

"Debtor"), by and through its undersigned counsel, hereby files it Opposition to *Debtor's*

*Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Post-*

*Petition Financing On A Senior Secured and Superpriority Basis, (II) Authorizing the*

*Use of Cash Collateral, (III) Granting Adequate Protection, (IV) Scheduling Final*

*Hearing Thereon, and (V) Granting Related Relief* (the "Motion"), and based thereon

provides as follows:

1

# I.  INTRODUCTION

Through the Motion, the Debtor seeks the use of the purported cash collateral of Salus Capital Partners, LLC ("Salus") as well as approval of a post-petition credit facility from Salus as bridge financing from the Petition Date through the end of the case.  As will be further discussed *infra*, PBC requests that this Court not approve the Motion because (1) there is no adequate protection provided for the use of PBC's cash collateral by the Debtor, (2) the Debtor fails to disclose critical terms of the proposed post-petition facility, (3) the Motion improperly requests that Salus be granted a lien on Chapter 5 avoidance actions, and (4) the Motion requires a sale timeline that will work to harm creditors of the Debtor's estate.

# II.  ARGUMENT

## A.  PBC Is Entitled To Adequate Protection

Absent consent, a debtor-in-possession must obtain bankruptcy court approval to use cash collateral that is subject to a non-consenting creditor's interest.  *See* Section 363(c)(2)(B) of the Bankruptcy Code.  Where the property the DIP or trustee intends to use (or sell or lease) is encumbered by the interest of a secured creditor (or otherwise subject to a nondebtor's interest, such as the interest of a co-owner), the creditor (or other nondebtor interest holder), upon request, is entitled to "adequate protection" of its interest. This rule applies whether or not the transaction is part of the ordinary course of business.  *See* Section 363(e) of the Bankruptcy Code.

PBC has a properly perfected blanket security interest in substantially all of the Debtor's assets to secure the $5.4 million obligation the Debtor owes PBC.  As the Motion provides, "[b]y virtue of a UCC-1 financing statement PBC filed on June 11,

2014, it alleges a security interest on substantially all of the Debtor's assets." Motion, p. 4, ¶ 9. In a conclusory fashion, and with no support, the Debtor, regarding PBC's secured claim, goes further to state that it "disputes any claim asserted by PBC." *Id.* Attached hereto as Exhibit "1" is a true and correct copy of the UCC-1 filed by PBC regarding its secured claims against the Debtor. Attached as Exhibit "2" is a true and correct copy of the security agreement for the underlying obligation of the Debtor to PBC. PBC submits that it is a secured creditor of the Debtor with a properly perfected security interest in substantially all of the Debtor's assets, which includes the Debtor's use of its cash collateral.

As illustrated in Exhibit B to the Motion, the Debtor will burn cash for the first thirteen (13) weeks of this case. Exhibit B is the proposed budget for the first thirteen (13) weeks of this case, and said budget provides for a cash shortfall of $5,115,493 for that time period. The starting cash is undisclosed, but even if it is zero, the Debtor proposes to use all of the cash the Debtor makes operationally in this time period. The Debtor is unable to provide adequate assurance for this diminution in PBC's collateral. As PBC has not provided its consent to the use of its cash collateral, the Motion must be denied on this point alone.

**B. The Debtor Fails To Disclose a Critical Term of the Proposed Post-Petition Credit Facility**

The Motion provides that "[t]he DIP Credit Agreement contemplates a partial roll-up of the Prepetition Obligations under the Prepetition Facility into the DIP Revolving Facility after entry of the Interim DIP Order." Motion, p. 12, ¶ 12. Although the proposed financing is $12 million in total, it is unclear what portion of this is roll-up

of the pre-petition balance, and what portion is to be used for bridge financing through the sale. This term should be disclosed so that creditors and the Court appreciate what Salus will be owed on part of its pre and post-petition claims against the Debtor.

**C.      The Motion Improperly Requests That Salus Be Granted a Lien on Chapter 5 Avoidance Actions**

The Motion provides that "the DIP Collateral under the Interim DIP Order includes all causes of action or proceeds therof, including avoidance actions, upon entry of the Final DIP Order. *Id.* To the extent that the Debtor is agreeing to provide a lien on avoidance actions to secure any of the pre-petition amounts owed to Salus, PBC opposes the request. Creditors of the Debtor's estate are uncertain of what a liquidation of the Debtor's assets may bring, and should the liquidation result in sale proceeds that fail to repay Salus' pre-petition claim in full, should it be found to be fully secured, unsecured creditors would be forced to make up some of the Debtor's shortfall to its secured creditors. Equity demands that this not be a term of any order entered in this case.

**D.      The Motion Requires a Sale Timeline That Will Work to Harm Creditors of the Debtor's Estate**

The Motion provides that as a part of the DIP credit facility, the Debtor must meet certain milestones in its case, including a time to sale its assets. Motion, p. 11. Specifically, the Debtor is required to obtain a sale order no later than July 29, 2014, and a sale must close no later than July 30, 2014. *Id.* PBC submits that this timeline prevents the Debtor from adequately marketing its assets post-bankruptcy. If the Court were to approve such a timeline, the Debtor would be required to find a purchaser for its assets, and close a sale to that purchaser in less than two (2) weeks from the Petition Date. This

is simply an unreasonable amount of time. Potential purchasers will have days to

conduct diligence on a company with over eighty (80) locations and sales exceeding $100

million per annum. The debtor cannot obtain the highest and best price for its assets

under such constraints.

### III. CONCLUSION

The Court should require that the Debtor address all of the issues listed herein before

approving the Motion. The Motion violates the adequate protection covenants of the

Bankruptcy Code, and stifles the marketing efforts of the Debtor to sale its assets.

**WHEREFORE**, PBC respectfully requests that the Court not grant the Motion for

the reasons stated herein, and for such other relief that the Court deems just and

appropriate.


Dated: July 16, 2014                          By: */s/ Ronald A. Clifford*_____
                                              Ronald A. Clifford
                                              BLAKELEY & BLAKELEYLLP
                                              54 W. 40th Street
                                              New York, NY 10018
                                              Tel.: (949) 260-0611
                                              Fax: (949) 260-0613
                                              Email: Rclifford@blakeleyllp.com

                                              Counsel to Prime Business Credit

                                              /s/ Scott H. Bernstein_____
                                              Scott H. Berstein
                                              MCCARTER & ENGLISH LLP
                                              100 Mulberry Street
                                              Four Gateway Center
                                              Newark, New Jersey 07102
                                              Telephone:  (973) 639-2007
                                              Facsimile:  (973) 297-3797

                                              Local Counsel to Prime Business
                                              Credit

-------------------------------------------

# EXHIBIT 1

-------------------------------------------

# UCC FINANCING STATEMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
STEVE AHN
213-225-1000

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
STEVE AHN
1055 W. SEVENTH ST SUITE 2200
LOS ANGELES, CA 90017
USA

DOCUMENT NUMBER: 42121210002
FILING NUMBER: 14-7403356477
FILING DATE: 03/17/2014 07:51
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

OR

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| LOVE CULTURE INC. | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2423 E. 23RD STREET | LOS ANGELES | CA | 90058 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | CORPORATION | CA | C3258229 ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

OR

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| LOVE CULTURE | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2423 E. 23RD STREET | LOS ANGELES | CA | 90058 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | CORPORATION | CA | C3258229 ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

OR

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| PRIME BUSINESS CREDIT, INC. | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1055 W. 7TH STREET, #2200 | LOS ANGELES | CA | 90017 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**
ALL OF CLIENT'S RIGHT, TITLE AND INTEREST IN AND TO THE FOLLOWING PROPERTY, NOW OWNED OR HEREAFTER ACQUIRED: ACCOUNTS, EQUIPMENT, INVENTORY, CHATTEL PAPER (INCLUDING ELECTRONIC CHATTEL PAPER), LETTERS OF CREDIT, AND LETTERS OF CREDIT RIGHTS, GENERAL INTANGIBLES, INVESTMENT PROPERTY, DEPOSIT ACCOUNTS, INSTRUMENTS, COMMERCIAL TORT CLAIMS, SUPPORTING OBLIGATIONS, INSURANCE POLICIES AND RECOVERIES, ALL BOOKS, RECORDS, FILES AND COMPUTER DATA RELATING TO THE FOREGOING AND ALL PROCEEDS OF THE FOREGOING.

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

| ☐ 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**
LOVE CULTURE INC. DBA LOVE CULTURE

FILING OFFICE COPY

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
STEVE AHN
213-225-1000

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
STEVE AHN
1055 W. SEVENTH ST SUITE 2200
LOS ANGELES, CA 90017
USA

DOCUMENT NUMBER: 43420990003
FILING NUMBER: 14-7415384229
FILING DATE: 06/11/2014 10:04
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

OR

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| LOVE CULTURE INC. | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2423 E. 23RD STREET | LOS ANGELES | CA | 90058 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | CORPORATION | CA | C3258229    ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

OR

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| LOVE CULTURE | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2423 E. 23RD STREET | LOS ANGELES | CA | 90058 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | CORPORATION | CA | C3258229    ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

OR

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| PRIME BUSINESS CREDIT, INC. | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1055 W. 7TH STREET, SUITE 2200 | LOS ANGELES | CA | 90017 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

ALL OF CLIENT'S RIGHT, TITLE AND INTEREST IN AND TO THE FOLLOWING PROPERTY, NOW OWNED OR HEREAFTER ACQUIRED: ACCOUNTS, EQUIPMENT, INVENTORY, CHATTEL PAPER (INCLUDING ELECTRONIC CHATTEL PAPER), LETTERS OF CREDIT, AND LETTERS OF CREDIT RIGHTS, GENERAL INTANGIBLES, INVESTMENT PROPERTY, DEPOSIT ACCOUNTS, INSTRUMENTS, COMMERCIAL TORT CLAIMS, SUPPORTING OBLIGATIONS, INSURANCE POLICIES AND RECOVERIES, ALL BOOKS, RECORDS, FILES AND COMPUTER DATA RELATING TO THE FOREGOING AND ALL PROCEEDS OF THE FOREGOING.

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

☐ **6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS** Attach Addendum [if applicable]

**7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]** [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**
LOVE CULTURE INC. DBA LOVE CULTURE

FILING OFFICE COPY

-------------------------------------------

**EXHIBIT 2**

-------------------------------------------

# SECURITY AGREEMENT

This Security Agreement (this "Agreement") is entered into as of the Effective Date, between Prime Business Credit, Inc. ("Lender"), with offices at 1055 W. 7ᵗʰ Street, Suite 2200, Los Angeles, CA 90017, and Love Culture, Inc. dba Love Culture ("Borrower"), whose address is 2423 E. 23rd Street, Los Angeles, CA 90058.

1.   **Definitions**

   1.1   "Collateral"

      1.1.1   Continuing Guarantee, which is secured by that certain Deed of Trust against the residential property located at 2157 Sheringham Lane, Los Angeles, CA 90077, executed by Jai Rhee and Eun Jung Kim, Husband and Wife as Joint Tenants

      1.1.2   All Borrower's right, title, and interest in and to the following property and interests in property, now owned and hereafter acquired:  Accounts, Equipment, Inventory, Chattel Paper (including Electronic Chattel Paper), Letters of Credit and Letters of Credit Rights, General Intangibles, Investment Property, Deposit Accounts, Instruments, Documents, Commercial Tort Claims, Supporting Obligations, the Collateral Account, as defined herein, insurance policies and recoveries, all books, records, files and computer data relating to the foregoing and all proceeds of the foregoing.

   1.2   "Credit Limit" --  $1,500,000.00

   1.3   "Default Rate"   -- The Interest Rate plus Ten percent (10.0%) per annum.

   1.4   "Interest Rate"   -- Zero percent (0.0%) as set forth in the Note.

   1.5   "Event of Default" -- Shall have that meaning set forth in Section 6.1 herein.

   1.6   "Guarantor"  --  Any guarantor of any of the Obligations.

   1.7   "Obligations" -- all present and future obligations owing by Borrower to Lender whether or not for the payment of money, whether or not evidenced by any note or other instrument, whether direct or indirect, absolute or contingent, due or to become due, joint or several, primary or secondary, liquidated or unliquidated, secured or unsecured, original or renewed or extended, whether arising before, during or after the commencement of any Bankruptcy Case in which Borrower is a Borrower, including but not limited to any obligations arising pursuant to letters of credit of acceptance transactions or any other financial accommodations; and all principal, interest, fees, charges, expenses, attorney's fees and accountants' fees chargeable to Borrower or incurred by Lender in connection with the PBC Documents and/or the transaction(s) related thereto.

   1.8   "Note" -- means the (a) the promissory note dated the same date as this Agreement executed by Borrower evidencing the short term loan made pursuant to this Agreement, and all extensions, renewals, modifications and replacements of such promissory note, and (b) any additional note or notes now or hereafter executed by Borrower in favor of Lender which arises out of this Agreement, and all extensions, renewals, modifications and replacements of any and all such note or notes.

   1.9   "PBC Documents" -- means the this Agreement, the Note, the Business Loan Agreement, all documents or agreements, now or hereafter executed by Borrower or any of the Guarantors, respectively, and delivered to the Lender at the Lender's request, and all extensions, renewals and modifications thereof.

   1.10   Intentionally deleted.

1.11   "Request for Loan" -- "Request for Loan" means a written or telephonic request (or other form of request acceptable to the Lender) for a loan pursuant to this Agreement.

All other capitalized terms not otherwise defined herein shall have the meaning ascribed thereto in the PBC Documents or the Uniform Commercial Code, presently in effect in California.

2.   **Short Term Loan and Repayment**.

2.1   Short Term Loan.      The Lender shall make a loan to the Borrower as specified in the Promissory Note dated March 13, 2014.

2.2   Use of Loan Proceeds.   All Loan proceeds received by Borrower shall be used for general working capital purposes in the ordinary course of Borrower's business.  The Lender shall have no obligation to monitor or verify the use or application of any Loan proceeds disbursed by the Lender.

2.3   Intentionally deleted.

2.4   Repayment of Short Term Loan.  Provided that there is no Event of Default, the loan under this Agreement and all unpaid accrued interest and late payment charges thereof, shall be repaid in full on the Maturity Date as set forth in the Promissory Note, entered between the parties on March 13, 2014, or, upon demand by Lender.

2.5   All-Inclusive Fee.  Borrower shall pay an All Inclusive Fee of THREE HUNDRED THOUSAND AND 0/100 DOLLARS ($300,000.00).

2.6   Reliance by Lender.  The Lender may conclusively presume that all requests, statements, information, certifications, and representations, whether written or oral, submitted or made by Borrower or any of its agents to the Lender in connection with the Loan are true and correct, and the Lender shall be entitled to rely thereon, without investigation or inquiry of any kind by the Lender, in disbursing the Loan proceeds and taking or refraining from taking any other action in connection with the Loan. Without limiting the generality of this Section, Borrower acknowledges and agrees that (a) it is in the best interest of Borrower that the Lender respond to and be entitled to rely upon Requests for Loans that are given by Borrower in writing, by telephone, or by other telecommunication method acceptable to the Lender without the Lender having to inquire into the actual authority of the Person making such request and purporting to act on behalf of Borrower; (b) therefore, the Lender may conclusively rely on any and all Requests for Loans (whether made in writing, by telephone, or by or other form of request acceptable to the Lender) made by (i) any Person who purports to be one of the agents of Borrower who has been authorized to act for Borrower in any resolution or other form of authorization of any kind delivered to the Lender (a "Borrower Authorization"); and (ii) any other Person who the Lender in good faith believes to be authorized to act for Borrower (notwithstanding the fact that such other Person is not identified in any Borrower Authorization); and (c) Borrower assumes all risks arising out of any lack of actual authority by any Person submitting any form of Request for Loan (whether made in writing, by telephone, or by other telecommunication method) to the Lender and the Lender's reliance on such Request for Loan.

3.   **Grant of Security Interest**.   As security for the performance of the Obligations, Borrower grants to Lender a continuing general lien and security interest in the Collateral. Borrower is authorized to file a UCC-1 Financing Statement and other document necessary to perfect or protect Lender's security interest in the Collateral.

4.   **Borrower's Warranties and Representations.** Borrower warrants, agrees and represents each of the following:

4.1     Borrower will take all steps as Lender may request to create and maintain in Lender's favor a perfected security interest in all Collateral;

4.2     As of the date of this Agreement, the Collateral is free and clear of any liens, security interest, mortgages, and any other encumbrances, and Borrower is the absolute owner thereof;

4.3     Borrower will defend Lender's security interest in the Collateral against any claims or demands of third parties;

4.4     Borrower will promptly pay, when due, all taxes or assessments levied on account of the Collateral;

4.5     All Collateral is in Borrower's possession and none is or will be stored with a bailee,

4.6     All of the Collateral has been and will have been acquired in the ordinary course of business from sellers in business of selling such goods; and

4.7     None of the Collateral has been or will have been purchased in a bulk sale.

5.    **Covenants**.

5.1     Notice to Lender. Borrower will immediately give written notice to Lender of each of the following:

5.1.1     All material factors affecting the collateral and Borrower's interest therein;

5.1.2     Any change in the location of any portion of the Collateral; and

5.1.3     Any material change in the nature or value of all or any portion of the Collateral.

5.2     Protection of Collateral.

5.2.1     If any Collateral is in the possession or control of any third party, Borrower shall, at Lender's request, notify such third party of Lender's security interest.

5.2.2     Borrower agrees to maintain books and records pertaining to the Collateral in such detail, form and scope as Lender shall require.

5.2.3     Borrower agrees to notify Lender promptly of any change in Borrower's name, mailing address, principal place of business or location of the Collateral.

5.2.4     Borrower shall promptly advise Lender of any event, which could have a material adverse effect on the value of the Collateral or on the lien and security interest granted to Lender herein.

5.2.5     From time to time as requested by Lender, at the sole expense of Borrower, Lender or its designee shall have access, during reasonable business hours if prior to an Event of Default and at any time if on or after an Event of Default, to all premises where Collateral is located for the purposes of inspecting (and removing, if after the occurrence of an Event of Default) any of the Collateral, including Borrower's books and records, and Borrower shall permit Lender or its designee to make copies of such books and records or extracts therefrom as Lender may request.

5.3     Expenses.  Borrower shall pay, on Lender's demand, all of the following costs and expenses, whether incurred before or after the commencement of any case with respect to Borrower or any guarantor of the Obligations under the United States Bankruptcy Code or any successor statute;

5.3.1     All out-of-pocket expenses of Lender incident to the negotiation, preparation (failure of Lender to initially request this reimbursement shall not constitute a waiver of this provision) or

enforcement of this Agreement, including, but not limited to attorneys' fees an expenses, as well as any amendments, extensions and renewals thereof, including expenses necessary to perfect Lender's security interest herein; and

5.3.2    All expenses and costs from time to time hereafter incurred by Lender during the course of periodic field examinations of the Collateral and Borrower's operations; and

5.3.3    All costs and expenses, including attorneys' fees, which Lender incurs in enforcing any judgment rendered in connection with this Agreement of any related documents. This provision is severable from all other provisions hereof and shall survive, and not be deemed merged into, any such judgment.

5.4    Insurance. Borrower shall have the collateral insured against loss or damage by fire, theft, burglary, pilferage, loss in transportation and such hazards as Lender shall specify, by insurers approved by Lender, in amounts satisfactory to Lender and under policies containing lender's loss payable endorsements in favor of Lender

5.4.1    If Borrower fails to insure the Collateral as required above, Lender may procure such insurance and the cost of such insurance shall be secured hereby and shall be payable to Lender with interest on demand.

5.4.2    Any insurance policies or certificates will be deposited with Lender if Lender so requests.

5.4.3    Borrower agrees that the avails of any insurance of the Collateral, if any loss occurs, shall be applied to the payment of any or all of the Obligations as Lender in its sole discretion deems advisable, or to the replacement of any Collateral damaged or destroyed, as Lender may elect of direct.

5.4.4    Lender shall have the right, in Borrower's name or in Lender's name to file claims under any insurance policies, to receive and/or give acquittance for any payment that may be made thereunder, and to execute any and all endorsements, receipts, releases, assignments, reassignments, or other documents that may be necessary to effect the collection, compromise or settlement of any claims under any such insurance policies.

5.4.5    Borrower hereby agrees to provide to Lender the policy number, name and address of the insurance company with which Borrower maintains any business interruption or similar policy of insurance, together with any other information relating to such insurance policy, which Borrower may reasonably request.

5.5    Negative Pledge.  Subsequent to the date hereof, Borrower shall not pledge, assign or grant a security interest in the Collateral to any other party.

5.6    Maintenance of Perfection. Borrower hereby authorizes Lender to execute in Borrower's name and to file against Borrower in favor of Lender, financing statements or amendments relating to the Collateral, and to pay any sums necessary to discharge any lien or encumbrance which is senior to Lender's security interest in the Collateral, which sums shall be included as Obligations hereunder, and which sums shall accrue interest at the Default Rate until paid in full.

5.7    Location of Collateral.

5.7.1    All Collateral shall be maintained at Borrower's address set forth above and all other places of business.

5.7.2    Borrower shall notify Lender immediately upon Borrower's forming an intention to maintain Collateral at any location other than as set forth herein.

5.8    <u>Indemnity.</u> Borrower agrees to indemnify and hold harmless Lender from and against any and all claims, demands, losses, judgments and liabilities of whatsoever kind or nature and to reimburse Lender for all costs and expenses, including attorneys' fees, growing out of or resulting from the exercise by Lender of any right or remedy granted to it hereunder with respect to the Collateral except any such claim, damage, liability or expense arising from Lender's own gross negligence or willful misconduct.

5.9    <u>Revocation of Borrower's right to Sell Inventory Free and Clear of Lender's Security Interest.</u>

5.9.1    If an Event of Default should exist, Lender may revoke Borrower's right to sell inventory free and clear of Lender's security interest therein.

5.9.2    Lender may notify Borrower's account Borrowers or other persons or entities of such revocation.

5.10    <u>Rights Against Third Parties.</u> To the extent that any Obligations are not or hereafter secured by property other than the Collateral, or by a guarantee, endorsement of any property of any other entity, then Lender shall have the right to proceed against such other property, guarantee or endorsement upon Borrower's default, and Lender shall have the right in Lender's sole discretion to determine which rights, security, liens, security interest or remedies Lender shall at any time pursue, relinquish, subordinate, modify or take any other action with respect thereto without in any way modifying or affecting any of them or any of Lender's rights or the Obligations.

6.    **Default And Remedies**

6.1    **Events of Default.** The Lender, at its option, may declare Borrower to be in default under this Agreement and the other Loan Documents upon the occurrence of any or all of the following events (the declaration of such a default by the Lender shall constitute an "Event of Default"):

(a)    <u>Payment of Note and Other Monetary Obligations.</u> If Borrower fails to pay any of its indebtedness under the Note or perform any of the Obligations under this Agreement or any of the PBC Documents;

(b)    <u>Failure to Comply with, or to Perform Certain Non-Monetary Obligations Under Other PBC Documents.</u> If Borrower fails to comply with any of the covenants and warranties set forth in this Agreement or any of the PBC Documents;

(c)    <u>Misrepresentation.</u> If any request, statement, information, certification, representation, or warranty, whether written or oral, submitted or made by Borrower to the Lender in connection with this Agreement or any of the PBC Documents, is false or misleading in any manner;

(d)    <u>Insolvency of Borrower.</u> If (i) a petition is filed by or against Borrower under the federal bankruptcy laws or any other applicable federal or state bankruptcy, insolvency or similar law; (H) a receiver, liquidator, trustee, custodian, sequestrator, or other similar official is appointed to take possession of Borrower, the Collateral, or any material part of Borrower's other assets, or Borrower consents to such appointment; (iii) Borrower makes an assignment for the benefit of creditors; (iv) Borrower takes any action in furtherance of any of the foregoing; or (v) there is a material adverse change in Borrower's financial condition as represented to the Lender in connection with the Lender's approval of the Loan and the Lender reasonably determines that such change materially impairs Borrower's ability to perform any or all of the Obligations;

(e)    <u>Attachment.</u> If all or any material part of the assets of Borrower or any Guarantor are attached, seized, subjected to a writ or levied upon by any court process and Borrower

Initial (  )( )( )

fails to cause such attachment, seizure, writ or levy to be fully released or removed within fifteen (15) days after the occurrence of such event;

       (f)    <u>Injunctions.</u>  If a court order is entered against Borrower or any Guarantor enjoining the conduct of all or part of such Person's business and Borrower fails to cause such injunction to be fully stayed, dissolved or removed within fifteen(15) days after such order is entered;

       (g)    <u>Dissolution.</u> If Borrower or any Guarantor is a corporation, partnership, limited liability company, trust or other entity, the dissolution, liquidation, or termination of existence of such Person;

       (h)    <u>Transfers of Interests.</u> If Borrower is a corporation, partnership, limited liability company, or other entity, the sale or transfer of an aggregate of more than twenty-five percent (25%) of the beneficial interests in Borrower without the Lender's prior written consent;

       (i)    <u>Death; Incompetence.</u> If Borrower or any Guarantor is an individual, the death of such Person or judicial determination that such person is mentally incompetent, except where applicable law limits or prohibits the Lender's declaration of a default based on such occurrences; provided, however, that the Lender shall not declare an Event of Default to exist based solely on the death or mental incompetence of any individual Guarantor if, within forty-five (45) days after the occurrence of such event, Borrower causes a substitute guarantor to execute and deliver to the Lender a continuing guaranty in the form previously executed by the affected Guarantor, and the Lender in its discretion determines that such substitute guarantor's financial condition is comparable to that of the affected Guarantor and that such substitute Guarantor is otherwise reasonably acceptable to the Lender;

       (j)    <u>Impairment of Security Interest or Lender's Rights.</u> If (i) the validity or priority of the Lender's security interest in the Collateral is impaired for any reason; or (ii) the value of the Collateral has deteriorated, declined or depreciated as a result of any intentional act or omission by Borrower; or (iii) the Lender, acting in good faith and in a commercially reasonable manner, deems itself insecure because of the occurrence of an event affecting Borrower, or any Guarantor or the Collateral;

       (k)    <u>Default by Guarantors.</u> If any Guarantor fails to pay any of its indebtedness or perform any of its obligations under any of the Guaranties when due or the revocation, limitation or termination or attempted revocation, limitation or termination of any of the obligations of any Guarantor under any of the Guaranties; or

       (l)    <u>Misrepresentation by Guarantors</u>. If any request, statement, information, certification, representation, or warranty, whether written or oral, submitted or made by any Guarantor to the Lender in connection with the Loan or any other extension of credit by the Lender to Borrower or such Guarantor, now or in the future, is false or misleading in any manner.

    6.2    **Remedies.** Upon the Lender's election to declare Borrower to be in default under the Loan Documents, Borrower shall be deemed to be in default under the Loan Documents, and the Lender shall have the right to do any or all of the following:

       (a)    <u>Acceleration.</u> The Lender shall have the right to declare any or all of the Obligations to be immediately due and payable, including the entire principal amount and all accrued but unpaid interest under the Note, and notwithstanding the Maturity Date of the Note, such Obligations shall thereupon be immediately due and payable;

       (b)    <u>Remedies Under the PBC Documents.</u> The Lender may exercise any or all rights and remedies which the Lender may have under any or all of the PBC Documents and applicable law;

       (c)    <u>Offset Against Collateral Account</u>.  The Lender, may with or without notice



to Borrower, offset against all funds held in the Collateral Account.

(d)     Discontinuation of Disbursements. The Lender may discontinue or withhold any of the Loan proceeds; and

7.     **Miscellaneous**.

7.1.     Notices.

7.1.1    All Notices required to be given to any party other than Lender shall be deemed given upon the first to occur of.

7.1.2    Deposit thereof in a receptacle under the control of the United States Postal Services;

7.1.3    Transmittal by electronic means to a receiver under the control of such party; or

7.1.4    Actual receipt by such party or an employee or agent of such party.

7.2     All notices required to be given to Lender hereunder shall be deemed given upon actual a responsible officer of Lender.

7.3     For purposes hereof, notices hereunder shall be sent to the following address, or to such other addresses as each such party may in-writing hereafter indicate:

|  |  |
|---|---|
| BORROWER: | Love Culture, Inc. dba Love Culture |
| ADDRESS: | 2423 E. 23rd Street |
|  | Los Angeles, CA  90058 |
| OFFICER: | Jai Rhee, President |
| FAX NUMBER: | (323) 583-9993 |
|  |  |
| LENDER: | Prime Business Credit |
| ADDRESS: | 1055 7th Street, Ste 2200 |
|  | Los Angeles, CA 90017 |
| OFFICER: | Kevin Hong, FVP/Account Executive |
| FAX NUMBER: | (213) 225-1090 |

7.4     Entire Agreement.    This  Agreement  embodies  the  entire  agreement  and understanding among and between the parties hereto, and supersedes all prior or contemporaneous agreement and understanding between said parties, verbal or written, express or implied, relating to the subject matter hereof.

8.     **Costs and Expenses - General**

8.1     Borrower agrees to reimburse Lender for all costs and expenses, including attorneys' fees, which Lender has incurred or may incur in:

8.1.1    Negotiating, preparing, administering or enforcing this Agreement and any documents prepared in connection herewith

8.1.2    Protecting, preserving or enforcing any lien, security interest or other right granted by Borrower to Lender, or arising under applicable law, whether or not suit is brought, and

8.1.3    In connection with any federal or state insolvency proceeding commenced by or against Borrower, including those (i) arising out the automatic stay, (ii) seeking dismissal or conversion of the bankruptcy proceeding or (iii) opposing confirmation of Borrower's plan thereunder.

8.1.4    All such costs and expenses which have been incurred on or prior to the execution hereof shall be paid contemporaneously with the execution hereof. Any such costs and expenses incurred subsequent to the execution hereof shall become part of the Obligations when incurred and may be added to the outstanding principal amount due hereunder or under any Note.

8.2    Survival.    All representations, warranties and agreements herein contained on the part of Borrower shall be effective so long as Obligation remain outstanding.

8.3    Severability of Provisions. In the event any one or more of the provisions contained in this Agreement is held to be invalid, illegal or unenforceable in any respect, the such provision shall be ineffective only to the extent of such prohibition or invalidity, and the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

8.4    Amendment. This Agreement shall not be changed, modified, amended, or terminated except by a writing duly executed by all parties hereto.

8.5    No Waiver. No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power, or remedy which Lender may have, nor shall any such delay be construed to be a waiver of any of such rights, powers, or remedies, or any acquiescence in any breach or default hereunder; nor shall any waiver of any breach or default of Borrower hereunder be deemed a waiver of any default or breach subsequently occurring. All rights and remedies granted to Lender hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of action begun to enforce, any such right or remedy. The rights and remedies specified herein are cumulative and not exclusive of each other or of any rights or remedies which Lender would otherwise have. Any waiver, permit, consent or approval by Lender of any breach or default hereunder must be in writing and shall be effective only to the extent set forth in such writing and only as to that specific instance.

8.6    Headings.    Section headings and numbers have been set forth for convenience only.

8.7    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

8.8    Choice of Law. This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the laws of the State of California.

8.9    Waiver of Statute of Limitations. Borrower waives the pleading of any statute of limitations with respect to any and all actions in connection herewith.

8.10    Jurisdiction and Venue. Borrower hereby irrevocably agrees that all actions and proceedings arising out of or in any way connected with this Agreement shall be litigated in courts having sites within the City of Los Angeles, State of California, and Borrower hereby consents and submits to the jurisdiction of any local, state or federal court located within said jurisdiction. Borrower hereby irrevocably appoints and designates the Secretary of State of California as Borrower's true and lawful attorney and duly authorized agent for acceptance of service of legal process. Borrower agrees that service of such process upon such person shall constitute personal service of such process upon Borrower. Borrower hereby waives any right it may have to transfer or change the venue of any litigation arising out of or in any way connected with this Agreement.

8.11    Waiver of Trial By Jury, Judicial Reference. IN RECOGNITION OF THE HIGHER COSTS AND DELAY WHICH MAY RESULT FROM A JURY TRIAL, THE PARTIES HERETO WAIVE ANY

RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING HEREUNDER, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

THE PARTIES EACH PREFER THAT ANY DISPUTE BETWEEN THEM BE RESOLVED IN LITIGATION SUBJECT TO THE JURY TRIAL WAIVER SET FORTH HEREIN, BUT THE CALIFORNIA SUPREME COURT HAS HELD THAT SUCH PRE-DISPUTE JURY TRIAL WAIVERS ARE UNENFORCEABLE. THIS SECTION WILL BE APPLICABLE UNTIL: (I) THE CALIFORNIA SUPREME COURT HOLDS THAT A PRE-DISPUTE JURY TRIAL WAIVER PROVISION SIMILAR TO THAT CONTAINED IN HEREIN IS VALID OR ENFORCEABLE; OR (II) THE CALIFORNIA LEGISLATURE PASSES LEGISLATION AND THE GOVERNOR OF THE STATE OF CALIFORNIA SIGNS INTO LAW A STATUTE AUTHORIZING PRE-DISPUTE JURY TRIAL WAIVERS AND AS A RESULT SUCH WAIVERS BECOME ENFORCEABLE. ACCORDINGLY, THE PARTIES EACH AGREES THAT ANY CIVIL ACTION OR PROCEEDING INVOLVING A DISPUTE ARISING OUT OF OR RELATING TO THIS NOTE, SHALL BE TRIED SOLELY THROUGH A JUDICIAL REFERENCE AS PROVIDED IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES EACH FURTHER AGREES TO THE APPOINTMENT OF JAMS AS THE REFEREE APPOINTED TO CONDUCT THE TRIAL AND SUCH OTHER RELATED PROCEEDINGS. THE PARTIES FURTHER AGREES THAT THE FILING OF ANY LAW AND MOTION HEARINGS OR THE INITIATION OF ANY HEARINGS TO OBTAIN ANY FORM OF A PREJUDGMENT REMEDY SHALL NOT OPERATE AS A WAIVER OF THE PARTIES RIGHT TO TRIAL SOLELY THROUGH A JUDICIAL REFERENCE. THE PARTIES EACH ACKNOWLEDGES THAT THE JUDICIAL REFEREE WILL LIKELY CHARGE FEES AND COSTS OVER AND ABOVE THE FEES AND COSTS NORMALLY CHARGED BY A COURT. THE PARTIES EACH AGREE TO INITIALLY EVENLY SPLIT THE FEES AND COSTS OF SUCH REFEREE BETWEEN THE PARTIES. NOTWITHSTANDING THE FOREGOING, THE PARTIES EACH FURTHER ACKNOWLEDGES THAT THE REFEREE MAY DECIDE THAT ONE PARTY OR THE OTHER IS THE PREVAILING PARTY IN WHICH EVENT THE NON-PREVAILING PARTY WILL BE OBLIGATED TO REIMBURSE THE PREVAILING PARTY FOR ALL OF THE COSTS AND FEES PAID IN CONNECTION WITH THE HIRING OF THE REFEREE.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and effective as of the date and year first written above.

LOVE CULTURE, INC.
A CALIFORNIA CORPORATION
DBA LOVE CULTURE

By: _____
Jai Rhee, President

By: _____
Eun Jung Kim, Secretary

PRIME BUSINESS CREDIT, INC.

By: _____
Kevin Hong, FVP/Account Executive

Effective Date:  March 13, 2014

# SECURITY AGREEMENT

This Security Agreement (this "Agreement") is entered into as of the Effective Date, between Prime Business Credit, Inc. ("Lender"), with offices at 1055 W. 7th Street, Suite 2200, Los Angeles, CA 90017, and Love Culture, Inc. dba Love Culture ("Borrower"), whose address is 2423 E. 23rd Street, Los Angeles, CA 90058.

1.    **Definitions**

1.1    "Collateral" --   All Borrower's right, title, and interest in and to the following property and interests in property, now owned and hereafter acquired:  Accounts, Equipment, Inventory, Chattel Paper (including Electronic Chattel Paper), Letters of Credit and Letters of Credit Rights, General Intangibles, Investment Property, Deposit Accounts, Instruments, Documents, Commercial Tort Claims, Supporting Obligations, the Collateral Account, as defined herein, insurance policies and recoveries, all books, records, files and computer data relating to the foregoing and all proceeds of the foregoing.

1.2    "Credit Limit"  --  $5,000,000.00

1.3    "Default Rate"    -- The Interest Rate plus Eight percent (8.0%) per annum.

1.4    "Interest Rate"    --  Three point two-five percent (3.25%) plus the Index Rate set forth in the Note.

1.5    "Event of Default" -- Shall have that meaning set forth in Section 6.1 herein.

1.6    "Guarantor"   --  Any guarantor of any of the Obligations.

1.7    "Obligations" --  all present and future obligations owing by Borrower to Lender whether or not for the payment of money, whether or not evidenced by any note or other instrument, whether direct or indirect, absolute or contingent, due or to become due, joint or several, primary or secondary, liquidated or unliquidated, secured or unsecured, original or renewed or extended, whether arising before, during or after the commencement of any Bankruptcy Case in which Borrower is a Borrower, including but not limited to any obligations arising pursuant to letters of credit of acceptance transactions or any other financial accommodations; and all principal, interest, fees, charges, expenses, attorney's fees and accountants' fees chargeable to Borrower or incurred by Lender in connection with the PBC Documents and/or the transaction(s) related thereto.

1.8    "Note" -- means the (a) the promissory note dated the same date as this Agreement executed by Borrower evidencing the short term loan made pursuant to this Agreement, and all extensions, renewals, modifications and replacements of such promissory note, and (b) any additional note or notes now or hereafter executed by Borrower in favor of Lender which arises out of this Agreement, and all extensions, renewals, modifications and replacements of any and all such note or notes.

1.9    "PBC Documents" -- means the this Agreement, the Note, the Business Loan Agreement, all documents or agreements, now or hereafter executed by Borrower or any of the Guarantors, respectively, and delivered to the Lender at the Lender's request, and all extensions, renewals and modifications thereof.

1.10    "Prime Rate" -- The highest prime rate publicly announced from time to time by Wall Street Journal as its prime or base rate or equivalent rate.

1.11    "Request for Loan" -- "Request for Loan" means a written or telephonic request (or other form of request acceptable to the Lender) for a loan pursuant to this Agreement.

All other capitalized terms not otherwise defined herein shall have the meaning ascribed thereto in the PBC Documents or the Uniform Commercial Code, presently in effect in California.

2.    **Short Term Loan and Repayment**.

2.1    <u>Short Term Loan.</u>    The Lender shall make a loan to the Borrower as specified in the Promissory Note dated November 18, 2013.

2.2    <u>Use of Loan Proceeds.</u>    All Loan proceeds received by Borrower shall be used for general working capital purposes in the ordinary course of Borrower's business.  The Lender shall have no obligation to monitor or verify the use or application of any Loan proceeds disbursed by the Lender.

2.3    <u>Intentionally deleted.</u>

2.4    <u>Repayment of Short Term Loan</u>.  Provided that there is no Event of Default, the loan under this Agreement and all unpaid accrued interest and late payment charges thereof, shall be repaid in full on the Maturity Date as set forth in the Promissory Note, entered between the parties on November 18, 2013, or, upon demand by Lender.

2.5    <u>Facility Fee</u>.  Borrower shall pay the Facility Fee of one percent (1.00%).

2.6    <u>Reliance by Lender.</u>  The Lender may conclusively presume that all requests, statements, information, certifications, and representations, whether written or oral, submitted or made by Borrower or any of its agents to the Lender in connection with the Loan are true and correct, and the Lender shall be entitled to rely thereon, without investigation or inquiry of any kind by the Lender, in disbursing the Loan proceeds and taking or refraining from taking any other action in connection with the Loan. Without limiting the generality of this Section, Borrower acknowledges and agrees that (a) it is in the best interest of Borrower that the Lender respond to and be entitled to rely upon Requests for Loans that are given by Borrower in writing, by telephone, or by other telecommunication method acceptable to the Lender without the Lender having to inquire into the actual authority of the Person making such request and purporting to act on behalf of Borrower; (b) therefore, the Lender may conclusively rely on any and all Requests for Loans (whether made in writing, by telephone, or by or other form of request acceptable to the Lender) made by (i) any Person who purports to be one of the agents of Borrower who has been authorized to act for Borrower in any resolution or other form of authorization of any kind delivered to the Lender (a "Borrower Authorization"); and (ii) any other Person who the Lender in good faith believes to be authorized to act for Borrower (notwithstanding the fact that such other Person is not identified in any Borrower Authorization); and (c) Borrower assumes all risks arising out of any lack of actual authority by any Person submitting any form of Request for Loan (whether made in writing, by telephone, or by other telecommunication method) to the Lender and the Lender's reliance on such Request for Loan.

3.    **Grant of Security Interest**.    As security for the performance of the Obligations, Borrower grants to Lender a continuing general lien and security interest in the Collateral. Borrower is authorized to file a UCC-1 Financing Statement and other document necessary to perfect or protect Lender's security interest in the Collateral.

4.    **Borrower's Warranties and Representations.** Borrower warrants, agrees and represents each of the following:

4.1    Borrower will take all steps as Lender may request to create and maintain in Lender's favor a perfected security interest in all Collateral;

4.2    As of the date of this Agreement, the Collateral is free and clear of any liens, security interest, mortgages, and any other encumbrances, and Borrower is the absolute owner thereof;

4.3     Borrower will defend Lender's security interest in the Collateral against any claims or demands of third parties;

4.4     Borrower will promptly pay, when due, all taxes or assessments levied on account of the Collateral;

4.5     All Collateral is in Borrower's possession and none is or will be stored with a bailee,

4.6     All of the Collateral has been and will have been acquired in the ordinary course of business from sellers in business of selling such goods; and

4.7     None of the Collateral has been or will have been purchased in a bulk sale.

5.     **Covenants**.

5.1     Notice to Lender. Borrower will immediately give written notice to Lender of each of the following:

5.1.1     All material factors affecting the collateral and Borrower's interest therein;

5.1.2     Any change in the location of any portion of the Collateral; and

5.1.3     Any material change in the nature or value of all or any portion of the Collateral.

5.2     Protection of Collateral.

5.2.1     If any Collateral is in the possession or control of any third party, Borrower shall, at Lender's request, notify such third party of Lender's security interest.

5.2.2     Borrower agrees to maintain books and records pertaining to the Collateral in such detail, form and scope as Lender shall require.

5.2.3     Borrower agrees to notify Lender promptly of any change in Borrower's name, mailing address, principal place of business or location of the Collateral.

5.2.4     Borrower shall promptly advise Lender of any event, which could have a material adverse effect on the value of the Collateral or on the lien and security interest granted to Lender herein.

5.2.5     From time to time as requested by Lender, at the sole expense of Borrower, Lender or its designee shall have access, during reasonable business hours if prior to an Event of Default and at any time if on or after an Event of Default, to all premises where Collateral is located for the purposes of inspecting (and removing, if after the occurrence of an Event of Default) any of the Collateral, including Borrower's books and records, and Borrower shall permit Lender or its designee to make copies of such books and records or extracts therefrom as Lender may request.

5.3     Expenses.  Borrower shall pay, on Lender's demand, all of the following costs and expenses, whether incurred before or after the commencement of any case with respect to Borrower or any guarantor of the Obligations under the United States Bankruptcy Code or any successor statute;

5.3.1     All out-of-pocket expenses of Lender incident to the negotiation, preparation (failure of Lender to initially request this reimbursement shall not constitute a waiver of this provision) or enforcement of this Agreement, including, but not limited to attorneys' fees an expenses, as well as any amendments, extensions and renewals thereof, including expenses necessary to perfect Lender's security interest herein; and

5.3.2    All expenses and costs from time to time hereafter incurred by Lender during the course of periodic field examinations of the Collateral and Borrower's operations; and

5.3.3    All costs and expenses, including attorneys' fees, which Lender incurs in enforcing any judgment rendered in connection with this Agreement of any related documents. This provision is severable from all other provisions hereof and shall survive, and not be deemed merged into, any such judgment.

5.4    Insurance. Borrower shall have the collateral insured against loss or damage by fire, theft, burglary, pilferage, loss in transportation and such hazards as Lender shall specify, by insurers approved by Lender, in amounts satisfactory to Lender and under policies containing lender's loss payable endorsements in favor of Lender

5.4.1    If Borrower fails to insure the Collateral as required above, Lender may procure such insurance and the cost of such insurance shall be secured hereby and shall be payable to Lender with interest on demand.

5.4.2    Any insurance policies or certificates will be deposited with Lender if Lender so requests.

5.4.3    Borrower agrees that the avails of any insurance of the Collateral, if any loss occurs, shall be applied to the payment of any or all of the Obligations as Lender in its sole discretion deems advisable, or to the replacement of any Collateral damaged or destroyed, as Lender may elect of direct.

5.4.4    Lender shall have the right, in Borrower's name or in Lender's name to file claims under any insurance policies, to receive and/or give acquittance for any payment that may be made thereunder, and to execute any and all endorsements, receipts, releases, assignments, reassignments, or other documents that may be necessary to effect the collection, compromise or settlement of any claims under any such insurance policies.

5.4.5    Borrower hereby agrees to provide to Lender the policy number, name and address of the insurance company with which Borrower maintains any business interruption or similar policy of insurance, together with any other information relating to such insurance policy, which Borrower may reasonably request.

5.5    Negative Pledge.  Subsequent to the date hereof, Borrower shall not pledge, assign or grant a security interest in the Collateral to any other party.

5.6    Maintenance of Perfection. Borrower hereby authorizes Lender to execute in Borrower's name and to file against Borrower in favor of Lender, financing statements or amendments relating to the Collateral, and to pay any sums necessary to discharge any lien or encumbrance which is senior to Lender's security interest in the Collateral, which sums shall be included as Obligations hereunder, and which sums shall accrue interest at the Default Rate until paid in full.

5.7    Location of Collateral.

5.7.1    All Collateral shall be maintained at Borrower's address set forth above and all other places of business.

5.7.2    Borrower shall notify Lender immediately upon Borrower's forming an intention to maintain Collateral at any location other than as set forth herein.

5.8    Indemnity. Borrower agrees to indemnify and hold harmless Lender from and against any and all claims, demands, losses, judgments and liabilities of whatsoever kind or nature and to reimburse

Lender for all costs and expenses, including attorneys' fees, growing out of or resulting from the exercise by Lender of any right or remedy granted to it hereunder with respect to the Collateral except any such claim, damage, liability or expense arising from Lender's own gross negligence or willful misconduct.

5.9    <u>Revocation of Borrower's right to Sell Inventory Free and Clear of Lender's Security Interest.</u>

5.9.1    If an Event of Default should exist, Lender may revoke Borrower's right to sell inventory free and clear of Lender's security interest therein.

5.9.2    Lender may notify Borrower's account Borrowers or other persons or entities of such revocation.

5.10    <u>Rights Against Third Parties.</u> To the extent that any Obligations are not or hereafter secured by property other than the Collateral, or by a guarantee, endorsement of any property of any other entity, then Lender shall have the right to proceed against such other property, guarantee or endorsement upon Borrower's default, and Lender shall have the right in Lender's sole discretion to determine which rights, security, liens, security interest or remedies Lender shall at any time pursue, relinquish, subordinate, modify or take any other action with respect thereto without in any way modifying or affecting any of them or any of Lender's rights or the Obligations.

## 6.    **Default And Remedies**

6.1    **Events of Default.** The Lender, at its option, may declare Borrower to be in default under this Agreement and the other Loan Documents upon the occurrence of any or all of the following events (the declaration of such a default by the Lender shall constitute an "Event of Default"):

(a)    <u>Payment of Note and Other Monetary Obligations.</u> If Borrower fails to pay any of its indebtedness under the Note or perform any of the Obligations under this Agreement or any of the PBC Documents;

(b)    <u>Failure to Comply with, or to Perform Certain Non-Monetary Obligations Under Other PBC Documents.</u> If Borrower fails to comply with any of the covenants and warranties set forth in this Agreement or any of the PBC Documents;

(c)    <u>Misrepresentation.</u> If any request, statement, information, certification, representation, or warranty, whether written or oral, submitted or made by Borrower to the Lender in connection with this Agreement or any of the PBC Documents, is false or misleading in any manner;

(d)    <u>Insolvency of Borrower.</u> If (i) a petition is filed by or against Borrower under the federal bankruptcy laws or any other applicable federal or state bankruptcy, insolvency or similar law; (H) a receiver, liquidator, trustee, custodian, sequestrator, or other similar official is appointed to take possession of Borrower, the Collateral, or any material part of Borrower's other assets, or Borrower consents to such appointment; (iii) Borrower makes an assignment for the benefit of creditors; (iv) Borrower takes any action in furtherance of any of the foregoing; or (v) there is a material adverse change in Borrower's financial condition as represented to the Lender in connection with the Lender's approval of the Loan and the Lender reasonably determines that such change materially impairs Borrower's ability to perform any or all of the Obligations;

(e)    <u>Attachment.</u> If all or any material part of the assets of Borrower or any Guarantor are attached, seized, subjected to a writ or levied upon by any court process and Borrower fails to cause such attachment, seizure, writ or levy to be fully released or removed within fifteen (15) days after the occurrence of such event;

(f)    <u>Injunctions.</u> If a court order is entered against Borrower or any Guarantor enjoining the conduct of all or part of such Person's business and Borrower fails to cause such injunction

to be fully stayed, dissolved or removed within fifteen(15) days after such order is entered;

(g)    **Dissolution.** If Borrower or any Guarantor is a corporation, partnership, limited liability company, trust or other entity, the dissolution, liquidation, or termination of existence of such Person;

(h)    <u>Transfers of Interests.</u> If Borrower is a corporation, partnership, limited liability company, or other entity, the sale or transfer of an aggregate of more than twenty-five percent (25%) of the beneficial interests in Borrower without the Lender's prior written consent;

(i)    <u>Death; Incompetence.</u> If Borrower or any Guarantor is an individual, the death of such Person or judicial determination that such person is mentally incompetent, except where applicable law limits or prohibits the Lender's declaration of a default based on such occurrences; provided, however, that the Lender shall not declare an Event of Default to exist based solely on the death or mental incompetence of any individual Guarantor if, within forty-five (45) days after the occurrence of such event, Borrower causes a substitute guarantor to execute and deliver to the Lender a continuing guaranty in the form previously executed by the affected Guarantor, and the Lender in its discretion determines that such substitute guarantor's financial condition is comparable to that of the affected Guarantor and that such substitute Guarantor is otherwise reasonably acceptable to the Lender;

(j)    <u>Impairment of Security Interest or Lender's Rights.</u> If (i) the validity or priority of the Lender's security interest in the Collateral is impaired for any reason; or (ii) the value of the Collateral has deteriorated, declined or depreciated as a result of any intentional act or omission by Borrower; or (iii) the Lender, acting in good faith and in a commercially reasonable manner, deems itself insecure because of the occurrence of an event affecting Borrower, or any Guarantor or the Collateral;

(k)    <u>Default by Guarantors.</u> If any Guarantor fails to pay any of its indebtedness or perform any of its obligations under any of the Guaranties when due or the revocation, limitation or termination or attempted revocation, limitation or termination of any of the obligations of any Guarantor under any of the Guaranties; or

(l)    <u>Misrepresentation by Guarantors.</u> If any request, statement, information, certification, representation, or warranty, whether written or oral, submitted or made by any Guarantor to the Lender in connection with the Loan or any other extension of credit by the Lender to Borrower or such Guarantor, now or in the future, is false or misleading in any manner.

6.2    **Remedies.** Upon the Lender's election to declare Borrower to be in default under the Loan Documents, Borrower shall be deemed to be in default under the Loan Documents, and the Lender shall have the right to do any or all of the following:

(a)    <u>Acceleration.</u> The Lender shall have the right to declare any or all of the Obligations to be immediately due and payable, including the entire principal amount and all accrued but unpaid interest under the Note, and notwithstanding the Maturity Date of the Note, such Obligations shall thereupon be immediately due and payable;

(b)    <u>Remedies Under the PBC Documents.</u> The Lender may exercise any or all rights and remedies which the Lender may have under any or all of the PBC Documents and applicable law;

(c)    <u>Offset Against Collateral Account.</u>  The Lender, may with or without notice to Borrower, offset against all funds held in the Collateral Account.

(d)    <u>Discontinuation of Disbursements.</u> The Lender may discontinue or withhold any of the Loan proceeds; and

7.    **Miscellaneous**.

   7.1.   <u>Notices</u>.

      7.1.1   All Notices required to be given to any party other than Lender shall be deemed given upon the first to occur of.

      7.1.2   Deposit thereof in a receptacle under the control of the United States Postal Services;

      7.1.3   Transmittal by electronic means to a receiver under the control of such party; or

      7.1.4   Actual receipt by such party or an employee or agent of such party.

   7.2   All notices required to be given to Lender hereunder shall be deemed given upon actual a responsible officer of Lender.

   7.3   For purposes hereof, notices hereunder shall be sent to the following address, or to such other addresses as each such party may in-writing hereafter indicate:

| | |
|---|---|
| BORROWER: | Love Culture, Inc. dba Love Culture |
| ADDRESS: | 2423 E. 23rd Street |
| | Los Angeles, CA  90058 |
| OFFICER: | Jai Rhee, President |
| FAX NUMBER: | (323) 583-9993 |
| | |
| LENDER: | Prime Business Credit |
| ADDRESS: | 1055 7th Street, Ste 2200 |
| | Los Angeles, CA 90017 |
| OFFICER: | Kevin Hong, FVP/Account Executive |
| FAX NUMBER: | (213) 225-1090 |

   7.4   <u>Entire Agreement.</u>   This Agreement embodies the entire agreement and understanding among and between the parties hereto, and supersedes all prior or contemporaneous agreement and understanding between said parties, verbal or written, express or implied, relating to the subject matter hereof.

8.    **Costs and Expenses - General**

   8.1   Borrower agrees to reimburse Lender for all costs and expenses, including attorneys' fees, which Lender has incurred or may incur in:

      8.1.1   Negotiating, preparing, administering or enforcing this Agreement and any documents prepared in connection herewith

      8.1.2   Protecting, preserving or enforcing any lien, security interest or other right granted by Borrower to Lender, or arising under applicable law, whether or not suit is brought, and

      8.1.3   In connection with any federal or state insolvency proceeding commenced by or against Borrower, including those (i) arising out the automatic stay, (ii) seeking dismissal or conversion of the bankruptcy proceeding or (iii) opposing confirmation of Borrower's plan thereunder.

      8.1.4   All such costs and expenses which have been incurred on or prior to the execution hereof shall be paid contemporaneously with the execution hereof. Any such costs and

expenses incurred subsequent to the execution hereof shall become part of the Obligations when incurred and may be added to the outstanding principal amount due hereunder or under any Note.

8.2     Survival.    All representations, warranties and agreements herein contained on the part of Borrower shall be effective so long as Obligation remain outstanding.

8.3     Severability of Provisions. In the event any one or more of the provisions contained in this Agreement is held to be invalid, illegal or unenforceable in any respect, the such provision shall be ineffective only to the extent of such prohibition or invalidity, and the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

8.4     Amendment. This Agreement shall not be changed, modified, amended, or terminated except by a writing duly executed by all parties hereto.

8.5     No Waiver. No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power, or remedy which Lender may have, nor shall any such delay be construed to be a waiver of any of such rights, powers, or remedies, or any acquiescence in any breach or default hereunder; nor shall any waiver of any breach or default of Borrower hereunder be deemed a waiver of any default or breach subsequently occurring. All rights and remedies granted to Lender hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of action begun to enforce, any such right or remedy. The rights and remedies specified herein are cumulative and not exclusive of each other or of any rights or remedies which Lender would otherwise have. Any waiver, permit, consent or approval by Lender of any breach or default hereunder must be in writing and shall be effective only to the extent set forth in such writing and only as to that specific instance.

8.6     Headings.    Section headings and numbers have been set forth for convenience only.

8.7     Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

8.8     Choice of Law. This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the laws of the State of California.

8.9     Waiver of Statute of Limitations. Borrower waives the pleading of any statute of limitations with respect to any and all actions in connection herewith.

8.10    Jurisdiction and Venue. Borrower hereby irrevocably agrees that all actions and proceedings arising out of or in any way connected with this Agreement shall be litigated in courts having sites within the City of Los Angeles, State of California, and Borrower hereby consents and submits to the jurisdiction of any local, state or federal court located within said jurisdiction. Borrower hereby irrevocably appoints and designates the Secretary of State of California as Borrower's true and lawful attorney and duly authorized agent for acceptance of service of legal process. Borrower agrees that service of such process upon such person shall constitute personal service of such process upon Borrower. Borrower hereby waives any right it may have to transfer or change the venue of any litigation arising out of or in any way connected with this Agreement.

8.11    Waiver of Trial By Jury, Judicial Reference. IN RECOGNITION OF THE HIGHER COSTS AND DELAY WHICH MAY RESULT FROM A JURY TRIAL, THE PARTIES HERETO WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING HEREUNDER, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN

WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

THE PARTIES EACH PREFER THAT ANY DISPUTE BETWEEN THEM BE RESOLVED IN LITIGATION SUBJECT TO THE JURY TRIAL WAIVER SET FORTH HEREIN, BUT THE CALIFORNIA SUPREME COURT HAS HELD THAT SUCH PRE-DISPUTE JURY TRIAL WAIVERS ARE UNENFORCEABLE. THIS SECTION WILL BE APPLICABLE UNTIL: (I) THE CALIFORNIA SUPREME COURT HOLDS THAT A PRE-DISPUTE JURY TRIAL WAIVER PROVISION SIMILAR TO THAT CONTAINED IN HEREIN IS VALID OR ENFORCEABLE; OR (II) THE CALIFORNIA LEGISLATURE PASSES LEGISLATION AND THE GOVERNOR OF THE STATE OF CALIFORNIA SIGNS INTO LAW A STATUTE AUTHORIZING PRE-DISPUTE JURY TRIAL WAIVERS AND AS A RESULT SUCH WAIVERS BECOME ENFORCEABLE. ACCORDINGLY, THE PARTIES EACH AGREES THAT ANY CIVIL ACTION OR PROCEEDING INVOLVING A DISPUTE ARISING OUT OF OR RELATING TO THIS NOTE, SHALL BE TRIED SOLELY THROUGH A JUDICIAL REFERENCE AS PROVIDED IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES EACH FURTHER AGREES TO THE APPOINTMENT OF JAMS AS THE REFEREE APPOINTED TO CONDUCT THE TRIAL AND SUCH OTHER RELATED PROCEEDINGS. THE PARTIES FURTHER AGREES THAT THE FILING OF ANY LAW AND MOTION HEARINGS OR THE INITIATION OF ANY HEARINGS TO OBTAIN ANY FORM OF A PREJUDGMENT REMEDY SHALL NOT OPERATE AS A WAIVER OF THE PARTIES RIGHT TO TRIAL SOLELY THROUGH A JUDICIAL REFERENCE. THE PARTIES EACH ACKNOWLEDGES THAT THE JUDICIAL REFEREE WILL LIKELY CHARGE FEES AND COSTS OVER AND ABOVE THE FEES AND COSTS NORMALLY CHARGED BY A COURT. THE PARTIES EACH AGREE TO INITIALLY EVENLY SPLIT THE FEES AND COSTS OF SUCH REFEREE BETWEEN THE PARTIES. NOTWITHSTANDING THE FOREGOING, THE PARTIES EACH FURTHER ACKNOWLEDGES THAT THE REFEREE MAY DECIDE THAT ONE PARTY OR THE OTHER IS THE PREVAILING PARTY IN WHICH EVENT THE NON-PREVAILING PARTY WILL BE OBLIGATED TO REIMBURSE THE PREVAILING PARTY FOR ALL OF THE COSTS AND FEES PAID IN CONNECTION WITH THE HIRING OF THE REFEREE.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and effective as of the date and year first written above.

LOVE CULTURE, INC.
A CALIFORNIA CORPORATION
DBA LOVE CULTURE

By: _____
    Jai Rhee, President


By: _____
    Eun Jung Kim, Secretary

PRIME BUSINESS CREDIT, INC.


By: _____
    Kevin Hong, FVP/Account Executive


Effective Date:  November 18, 2013